Introduce the court. Good morning. I'm Carol Landau. I represent Erik Green. So the posture has changed since the opening of the briefs were written in this case. And the primary issue today is how U.S. v. Lindsay applies to this case. In U.S. v. Lindsay, a panel of this court held that evidence, while evidence of individual lender behavior is not admissible to disprove materiality, evidence of general lending standards in the mortgage industry is admissible to disprove materiality. In this case, the district court excluded proper and expert testimony that would have gone to that point. Well, some of it would have. Some of it would not have. That's correct. Let me just backtrack on the record a little bit. So, at trial, government offered evidence from the lender, the actual lender, about the statements at issue. And the lender's representative, the lender's former employee, justified that this was material and that was material, etc. And then there was a second witness that also testified about omissions and what was material and what was not. The defense didn't get to do anything. So the defense attorney in this case relied on the proper testimony of William Black, who was a well-known economist and criminologist. And it's notable at the hearing, like if you read the Daubert hearing that was held, by the way, Judge Carlton, of which the testimony was offered in evidence, Judge Carlton actually, at a certain point, said, you know, let's get to the specifics. Let's move away from the general. So Mr. Black was testifying, or Dr. Black, I guess I should say, was testifying about, you know, general things and the analysis and how he, and parts of the industry. And then the judge said, well, let's get to the specifics. And he didn't turn to that. And you're right. You know, testimony about New Century. And when I briefed this case, I, you know, I had some discipline. When you briefed this case, you had a harder argument because it was all on abuse of discretion of what the district court would allow in and what wouldn't. As to expert testimony, now you've got a case called U.S. v. Lindsay, which says, Judge, you made a legal error. Well, that is correct. Well, that's a case that's on abuse of discretion. Well, it was more than that. I had, before that, I had an SMR. I had the Supreme Court case, which changed the landscape. I know. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right.     All right. All right. And I just wanted to ask, the other side is what are you going to do with Lindsay? It seems to be that if, in fact, the testimony was admitted for general practices in the industry, Lindsay says it's okay. And if the court won't let it in, it is an abuse of discretion. Your Honor, you just made my argument in an action. Well, simply because that's what I think you should do. That's why she deserves my argument.   Well, you're not making my argument. It's not making my argument. It's making my argument. All right. But the other side has to respond to, of course, the judge's charge. But there are other issues. There are. And I mean, and unfortunately, I will say that some of the issues are resolved by judgment by Lindsay. Well, it's a good thing that Lindsay says she's going to be able to jump on this. Well, no. And I'm not going to belabor that point. It would be foolish of me. So Lindsay holds that evidence of intentional misconduct is not relevant. So that takes care of our case. So that's argument number two. I don't agree with it. And I made petitions for re-hearing. But it's not a matter for this panel. The other issue, and the government submitted a 2080-J letter on that as to the jury instruction on the difference between material omissions. And I'm going to say it's a fact. In U.S. v. Shields, a panel of these court held that that was not a plain error not to give the instruction to differentiate. And I think we're bound by that. So if there's any questions on Lindsay and how it applies to her, I'd like to address that. And there's not a whole slew of a couple minutes on prostitution. Could you just explain to me? My ears perked up when you said Judge Crockett, because he's not been with us for quite a while. He had more to go. When was this case tried? This case was tried, gosh, I have to look. It was, let's keep it sentenced in 2000. It was tried in 2014 and 2015. It's a 2015 appeal. And Judge Carlton, there were a number of these cases in the Eastern District of California. There was a lot of this. This is a case in many areas. There was a lot of problematic mortgages that resulted in prosecutions. And Judge Carlton had one of the cases. Judge Mendez had one, and this was one before Judge McLean. Judge Carlton admitted the testimony of Dr. William Black, and it actually resulted in an appeal. And it was, I mean, it was similar to, I don't remember, it may be actually in my executive record, but he admitted, and he ruled that it was relevant to materiality, even though evidence of under-negligence was not relevant. And so he admitted it. Judge Mendez, who tried another case, also pending before this court, disagreed. And Judge Goodwill disagreed. So there you have it. Well, why are we hearing a direct appeal? Why are we hearing, oh, because in this case, this case is from Judge Nunley. This is a trial of U.S. v. Green, which Judge Nunley tried. He did not admit that he excluded this expert testimony. Okay. That's why it would have taken three years to get the appeal here. The appeal is a 2015 appeal. No, a year and a half. Okay. Let me just... Do you want to save the rest, too? I do, but it was my decision. Keep it up, let's do it. I would love to keep it up. Can I just mention restitution for a minute, Your Honor? We have an issue on restitution. Okay. It's a very brief issue. This is a case in which New Century Mortgage paid the loans, and New Century Liquidating Trust is the claim victim. There is a brief... There's a break in the chain. There is no... Before the... Before New Century declared bankruptcy, they sold the loan in this case, the two loans. There is no evidence about what they sold the loan for or how much they took the loan back for. And that is a lack of evidence that defeats the government's claim. So... The thing about this restitution is that when I looked through this sentencing hearing, I realized that your client objected to the restitution. But what your client said was, based on the amount of evidence that had been introduced... And that's exactly what... No, I guess I said to myself, what is insufficient about the government's evidence? Why... What... What is the evidence... What is the evidence he would offer? What's the representationist evidence he might produce? And the district court said, no, of course, you can have an evidentiary hearing. He declined that. With all of that, how do I get to this issue? Because the government has the burden of proof. And after U.S. v. Weiss and U.S. v. Young and those cases, it's the government's burden... Here, the restitution is going to what is essentially a success group. It's the government's burden. And again, they offered evidence. The loan was sold... There was no concrete argument by the end court at the trial. That wasn't made. The only thing that was said was the amount of evidence that has been introduced, period. Well, all they introduced was this two-line declaration, and I would say that that covers my argument. Oh, you would? I would. I'm not sure, but it's a lot better than that. Thank you, Your Honor. It was made, but it's a lot better. Well, we can talk about... Anyway, Your Honor, thank you all for taking the rest of my time. Good morning. May it please the Court. Mike Landerson on behalf of the United States. I was trial counsel in this case. To start with Lindsay, the Lindsay decision distinguished statements like those about a loan applicant's marital status that lenders generally ignore when making decisions because they're immaterial from those like a monthly income that are material to the lender's decisions. Lindsay permits defendants to introduce industry-level testimony to try to show that statements fall into the immaterial category rather than into the material category with things like marital status. The reason that Black's testimony could be properly excluded is that nothing in Black's proper testimony went to that specific question. What happened was defense counsel introduced a specific question. Whether or not the statements in question in the case were in the material or the immaterial category at the industry level. I thought that was exactly what they were trying to say. That in general, the industry doesn't care whether you lie or whether you don't on your application. In general, they don't care about that. It's just, they're just out there trying to get loans and get them into the portfolio. They don't care about all that just because you can come up with one or two misstatements on it. And they were even saying that a really not excitingly bad statement is just not exactly right. That the industry doesn't care. And that's what the expert was trying to say. Which he also wanted to say, and not only that, but this bank exactly didn't care. I would actually disagree with it. So, what he was trying to say is what Lindsay characterizes as intentional disregard evidence. That there are bad lenders or bad banks where employees and the financial structure of that bank encourages these loans and encourages looking the other way at false statements. And in fact, Black himself admitted that certain statements did matter. For example, with respect to income, he agreed that it did matter what was put on the income section of the loan applications. If it was too low, the lenders were less likely to approve the loans. In other words, he's agreeing that it was material that's being listed. His testimony was about something different. It was about this control fraud theory. Which was this idea that you could identify by looking at the profile of these lending institutions and identify institutions where they were going to either be negligent or looking the other way as fraud was occurring. And that fits squarely into what Lindsay is talking about in its second holding. Which is that intentional disregard is not available as a defense. And that's the problem with Black's proffer testimony. He wasn't saying that what income was listed on the loan application didn't matter. He was saying that this lender and lenders like it had employees who intentionally disregarded false pay. And that's all that the court had to rely on in making its decision. Because that's what defense counsel introduced in a transcript. The prior testimony that involved the questions asked by Judge Carlton to probe the basis of Black's opinion. And then defense counsel furthered that argument. It's only a three-page argument. At the beginning of the excerpt's record, pages two to four, where defense counsel doubles down on that argument by suggesting that it's relevant that one of the co-defendants in this case also works for the lender. So the whole thrust of what defense counsel was arguing was this intentional disregard. Well, you're trying to parse this as good as you can. Because I read Lindsay too as being pretty broad. And it's an application. So now we're going back and trying to make the best of a bad deal from your point of view. But parsing what they offered as close as you can with the thrust of Lindsay seems to me gets you in big trouble. I don't think so. The Lindsay decision allows this industry-level testimony. But if you look at what Black was actually talking about, his theory is only relevant to filter innocence in the case if he accepts that he can identify certain lenders as bad lenders. And that bad lenders have incentives set up where they don't care what's put on the loan application. But once you do that, you're in this intentional disregard that Lindsay was specifically addressing. And I'll supposedly disagree with you. It's my understanding that you do not argue this error was harmless. We argued that it wasn't an abuse of discretion. However, it wouldn't be. It wouldn't be harmless. I didn't see any place in your brief where you argued the error wouldn't be harmless. You might make a good statement now, but I didn't see where they'd even have to respond to that. And in my book, you were cutting it pretty thin. You're either with us or you're against us. If you're against us, it isn't harmless. Send it back. Because I didn't find anything in your brief where you argued that it was harmless. The brief was predated the Lindsay decision. I understand, but I really haven't. Okay. And to fill out that record, there were numerous instances where Defense Counsel was able to ask questions, including questions about the lender practices, no-asset loans, stated loans, and that's very similar to Lindsay, and you can find some examples in excerpts of Record 195. How many answers did you get? Well, there were answers to those questions. Those weren't objected to. The other thing I would point out is that the district court didn't rule that this expert couldn't testify. The district court ruled, very consistent with Lindsay, that evidence of negligence and intentional disregard couldn't be admitted, and that was in Excerpt from Record 4. So if you look, he doesn't say you can't call black. He says you can't introduce evidence of intentional disregard or negligence, and Defense Counsel didn't call black. I think it was understood, at least by Defense Counsel, that if Defense Counsel couldn't introduce that type of evidence, then there was no point in calling this person under witness. So I think that's a big problem for Defense to get around. Do you have any other comments on the other issues? Yes. Let me address that. So the government submitted a declaration sworn under the penalty of perjury from Bucetri Liquidating Trust. It explained that it was a successor interest, and it attached a spreadsheet which showed the amount of the loans, the amount that that was sold for. That evidence was uncontradicted in the record. The court had to make a decision based on a preponderance of that evidence. There was no suggestion in the document that there was anything wrong with it. It looks internally consistent, coherent. There was no challenge to it, except was it enough? Well, we have sworn testimony through declaration versus nothing, and that's sufficient for the district court. It's not an abuse of discretion. I would like to briefly address the false statements and omissions issue. I appreciate the concession on plain air. But it also was not an argument about omissions. It was a false statement. There was a false statement about purchase price, which was supported by a forged purchase contract. When the government mentioned omissions in its rebuttal argument, what it was talking about was an intent argument, saying because of these other omissions, we know that there was an intent to defraud with respect to these false statements. So it wasn't an argument. But also, there was no plain air after Shields. I'm prepared to address more questions related to Lindsay. I think looking at the— It seems to me you're boiling your argument down, and Lindsay, do— Lindsay would meet us if you didn't look at what the offer of proof was. If we excluded industry-level testimony, and went to here's what's commonly accepted in this industry, rather than what was excluded, which was there are bad lenders and good lenders, and let's subdivide out the bad lenders and call back that industry, then we would have a real problem. We can't exclude industry-level testimony about what lenders accept and don't accept. But what the defense is trying to do is they're trying to break that industry into two parts, the good part of the industry and the bad part of the industry, and then say in the bad part of the industry, it doesn't matter. But that's not what Lindsay does. Lindsay acknowledges that there will be bad players in the lending industry, and that they're not judged by other bad players in the lending industry, but rather the standard is— If you say you couldn't talk about specific bad players, it doesn't necessarily say that you couldn't have two universes, good and bad. Well, the interesting thing about that is that if you follow that line of logic, you reach sort of a dead end with Lindsay, because you'd always be able to break away in any fraud case the people who are bad, and then you'd always be able to say that bad people act with intentional disregard, and therefore the exclusion of intentional disregard evidence, which Lindsay supports, and that other precedent this court supports, wouldn't really have any meaning anymore, because you'd always break away into those groups. But that's what it seems to me Lindsay really suggests is available to them. I don't think so. I think that Lindsay— Lindsay says you cannot go after a particular entity, but I don't think Lindsay says you can't take out the general, and even just testifying about the general, say, well, our so-and-so would do this, and so-and-so would do that, but the so-and-so would do that, or this way, and therefore it helps my argument. I don't think Lindsay says you can. You can make that argument. Lindsay says you can make the intentional disregard argument, but Black's theory is control fraud, that there are fraudulent entities, so what he's doing is he's breaking out companies that are fraudulent and saying that in fraudulent companies, they will ignore false statements, which makes sense. Fraudulent companies will ignore false statements, but Lindsay isn't saying that you can subdivide the industry and treat fraudulent companies differently than you do the general standards. He's asking, what is the general standard in this industry? Does marital status matter? Does gender matter? Does sexual orientation matter? Those don't matter to grantee or non-grantee, so those are immaterial, but other statements are material to this industry, income, assets, and to the extent that there are different loan products where certain statements are no longer material because they don't require certain types of information, you can't introduce evidence of that, and defense counsel did introduce some evidence of that through his examinations, and as the case developed, never sought to bring back Black for this industry-level testimony, never tried to introduce industry-level testimony through an expert. The trial judge said don't introduce evidence of intentional disregard or negligence. I think that there were people involved in the fraud and the slander. They introduced some of that, and there was plenty of testimony about Steven Peart, the co-defendant's involvement. There was testimony about the way that numbers were manipulated by insiders, but at the end of the day, and this was the second issue, which I don't think is being pursued here today, erased by Green, the judge obstructed that it doesn't matter if insiders were involved or if people were negligent of the slander, and that's consistent, Lindsay, but it's also consistent with the ruling regarding Black. The judge was consistent throughout. Thank you. Thank you, Eric. So I'd like to address a few points. First of all, the government's really suggesting that the issue isn't preserved adequately, and that's subject not the case. If you go to ER 3, you can see where that's, sorry, let me, I forgot my glasses. I apologize. But the court, the defense offered the testimony, and the court says, the court sort of sums it up, which is the judge's practice, he says, the government argues that the issue materiality relies only on the natural tendency to influence, and it's not required to show that anyone actually relied on the statements. Therefore, the government argues that any evidence regarding lender negligence or fraud is irrelevant, as well as unfairly prejudicial under Rule 403. And then the judge also speaks briefly. He submits, and the court says, the court agrees, this is the court's ruling, the court agrees that testimony and argument regarding the lending institution's pledge negligence or hopeless behavior is irrelevant and prejudicial. And then he goes on. And, you know, I mean, I suppose it's remotely susceptible, but it's pretty clear that evidence wasn't coming in. And, you know, the judge, and if you look at the judge's rulings throughout, the judge viewed Ms. E. Black's testimony as evidence of lender negligence, and that wasn't coming in. I think that's partly due to the arguments that the government has been making, and the government has been consistently saying that any testimony about what the lender did or the lending institution is, it goes to negligence, and that's not a defense. And the government has said that over and over and over, and they said it in their briefing. Secondly, the testimony, yes, some of the testimony went to the individual lender, but some of it went to the lending institution. And I think what we are facing here is that we had, if not the entire lending industry, I think a huge substantial portion was it really didn't care. And so I think that that is the kind of testimony that comes in, and the government can introduce its own testimony. I don't know. That's not one point that we're trying to get at. If I understand what he was doing, they're trying to get at the idea of what is material. Right. And so it's talking about the Escobar case where they say, well, this was just never in any digit of it, it can't be material. Now, how do you fit what was offered here with that confidence? Well, I think, Honor, that, you know, in all honesty, I disagree with Lutzi, because I don't know who he put to sleep anyway. But I think that what we're looking at is we're looking at an industry as a whole, and it may well have included, it may not have been limited to some prime lenders, it probably included so-called prime lenders, who really just didn't care for a long period of time. And I think, you know, in Lutzi we're talking about the government, and the government was saying this was a false certification of requirements and, you know, regulations. And it's quite, you know, does the government care, does the government not care? And I think it's quite similar, because if when you sign off on a claim submission, for example, you're certifying legal compliance. Well, in the same way, you know, there are certain statements that are always included in a loan application. And, you know, in the best, you know, and the question is, is the lender or the lending industry really paying attention to them? I think that I'm, I don't know if that sufficiently answers your question. It may not. I think that I'm taking the best I can do with that one. Another issue is the government said, well, yeah, we didn't raise harmless and hurt. Well, thankfully, harmless and hurt. And anyway, it wasn't harmless. The defense in this case focused on Mr. Green's lack of intent, and they basically, they pointed to forged signatures, and they pointed to misbehavior by others, and they tried to focus on the idea that Mr. Green did not know, and he shouldn't be found guilty. That's very different from the true reality as to which they really had no defense. And, in fact, there is at least one point, and it's in Reporters' Transcript 482-83, where defense counsel tried to ask the new century, the former employee of the new century, about Angelone's and the judge's statement of objection. So it's different from Lindsay in that these sorts of things were excluded. They were not amended. So it seems to me, then, that the government is arguing, well, also, well, and nonetheless, when you look at the, if you will, proffered evidence, you don't find that the proffered evidence really meets the kind of testimony Lindsay allows in. How do you respond? Actually, some of it does. Some of it does. Tell us about it. If you go to ER 2930, the expert talks about the lending industry as a competitive industry. He talks about how do you grow and the emphasis on growth of the industry. And he says, he talks about, like, how do you grow, he says, for example, how many really good credit Americans, Americans with great credit quality, were there in 2004, 2008, and couldn't get along? Zero. So how are you going to grow 20 to 50% a year by bringing in a huge upsurge of people with really high credit quality? The only way, and then he talks about how they do it. So that is. But that's true that there's no such thing as mortgage fraud. And because nothing is, they're just going to give you loans, something is material. Well, no, I would say, no, but I think what I'm saying, no, Your Honor, that's not correct. It's fair to say it's a true question. And I think one of the things here that the government has disregarded is that the government comes in all the time, they do it all the time, and they do it in this case, is that they introduce evidence about the materiality as to the individual lender. And so, and I would argue in this, in a sense, by doing something to open the door, why can't you? But that's not what you're about to argue is outside policy. Well, not necessarily. Policy didn't address the issue of opening the door, but it is in my brain. I agree with you. If you have no further questions, I'll pause here. Thank you, Your Honor. Thank you both counsels. Very good. Thank you for your arguments. I think we understand your arguments and understand the issues. Case 15-10554 is submitted.
judges: Schroeder, N.R. Smith, Piersol